UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KASANDRA J. GREENE,<br><br>Plaintiff,<br><br>v.<br><br>FRANK J. BISIGNANO,<br>Commissioner of the Social Security Administration,<br><br>Defendant. | ) | Case No. 4:25-cv-00719-SRC |

**Memorandum and Order**

Kasandra Greene seeks judicial review, under 42 U.S.C. § 405(g), of the Commissioner of Social Security's final decision denying her protective application for a period of disability and disability insurance benefits under Title II of the Social Security Act. As discussed below, the Court affirms the Commissioner's decision.

## I. Procedural history

In 2023, Greene protectively filed an application for a period of disability and disability insurance benefits. Doc. 1 at 1; Tr. 185–86 (while Greene's opening brief mentions "supplemental security income," doc. 10 at 1, the Court treats this mention as a typo, because the brief does not otherwise discuss supplemental security income, *see id.* at 3–5, 11 (citing part 404 of Title 20 of the Code of Federal Regulations, which concerns disability insurance), and neither do her Complaint, *see generally* doc. 1, or the administrative record, *see* Tr. 184–86 (selecting "no" when asked about an intent to apply for supplemental security income and applying instead for a period of disability and disability insurance benefits)). The Social Security Administration denied her application on initial review, Tr. 95–103, and on reconsideration, Tr. 108–14. Upon

Greene's request, Tr. 115–16, an Administrative Law Judge held a hearing, Tr. 31–64. Greene testified during the hearing. Tr. 39–59. Following the hearing, the ALJ denied Greene's application. Tr. 11–26. Greene then sought review of the ALJ's decision by the Appeals Council, but it denied Greene's request. Tr. 1–3. The ALJ's decision, therefore, is the final decision of the Commissioner that this Court reviews. *See* 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

## II. Standard for determining disability under the Act

Under the Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step evaluation when evaluating whether the claimant has a disability. 20 C.F.R. § 404.1520(a)(1). First, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *Id.*

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment[] . . . [that] significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work

activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (first citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); then citing *id.* at 158 (O'Connor, J., concurring); and then citing 20 C.F.R. § 404.1521(a)).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)). While RFC must be "based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (quoting *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009)). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (first citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013); and then citing *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012)).

Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history,

including arranging for a consultative examination[] if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of producing evidence showing the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932 (citing *Goff*, 421 F.3d at 785).

## III. The ALJ's decision

Applying this framework, the ALJ concluded that Greene had "not been under a disability, as defined in the Social Security Act, from February 1, 2023, through" May 3, 2024. Tr. 26. After finding that Greene had not engaged in substantial gainful activity since February 1, 2023, the ALJ considered whether Greene had any severe impairments. Tr. 16. She concluded that Greene had several severe impairments, including migraine headaches, seizures, depressive disorder, and anxiety disorder. Tr. 16. The ALJ then considered whether Green's impairments individually or in combination met or medically equaled any of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526. Tr. 18.

Next, the ALJ determined Greene's RFC by considering all evidence in the record. Tr. 20–24. The ALJ determined that Greene had the RFC "to perform less than the full range of light work as defined in 20 C.F.R. [§] 404.1567(b)." Tr. 20. Specifically, the ALJ found that Greene:

> can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit six hours and stand or walk six hours in an eight-hour workday. She cannot climb ladders, ropes, or scaffolds. She cannot work around unprotected heights or hazardous unshielded moving machinery. She can work in a moderate noise level (as defined in the Selected Characteristics of Occupations). She cannot perform phone work. She can understand, remember, and carry out simple instructions. She can occasionally interact with coworkers, supervisors, and the public in the performance of job duties. She can tolerate occasional changes in a routine work setting.

Tr. 20. The ALJ determined that Greene was "unable to perform any" of her "past relevant work." Tr. 24. Finally, the ALJ concluded that, considering Greene's "age, education, work experience," and RFC, "there are jobs that exist in significant numbers in the national economy" that Greene could perform. Tr. 25. The ALJ explained that a vocational expert testified that Greene "would be able to perform the requirements of representative occupations such as" a clerical router, a collator operator, and an office helper. Tr. 25. Accordingly, the ALJ decided that Greene was "not disabled." Tr. 26.

## IV. Standard of review

When a claimant seeks judicial review of the Commissioner's decision, the Court determines whether substantial evidence on the record as a whole supports his decision. 42 U.S.C. § 1383(c)(3). If it does, the Court must affirm the decision. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the Court "consider[s] all evidence in the record, whether it supports or

detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citing *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015)). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* (quoting *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)). The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'" *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

## V. Discussion

Greene argues that the ALJ failed to comply with 20 C.F.R. § 404.1529(c)(4) by "pointing to no genuine inconsistencies between [her] subjective allegations and the other evidence in the record" when determining Greene's RFC. Doc. 10 at 4; *see also id.* at 7 (The Court cites to page numbers as assigned by CM/ECF.). The ALJ also erroneously "attempted to paint [Greene's] allegations as inconsistent with her activities of daily living," Greene claims. *Id.* at 9.

### A. Inconsistencies between Greene's subjective allegations and the other evidence in the record

Greene challenges the ALJ's decision for allegedly "fail[ing] to provide an adequate explanation as to why the RFC failed to incorporate [Greene's] alleged limitations from depression and anxiety." Doc. 10 at 6 (While Greene references "subjective allegations" throughout her brief, she only specifically challenges the ALJ's analysis of the symptoms stemming from her depression and anxiety, not migraines, *see generally* doc. 10, so the Court tailors its discussion accordingly.). Greene claims that "[w]ithout proper explanation, this RFC

failed to accommodate additional mental limitations accounting for symptoms . . . includ[ing] difficulty sleeping, racing and ruminating thoughts, a history of suicidal thoughts and attempts, panic attacks occurring 2 to 3 times per week and when in public, poor concentration, poor energy and motivation, high anxiety when driving, and freak outs causing her to become physically sick." *Id.*

Section 404.1529 discusses how ALJs evaluate a claimant's subjective statements. *See* 20 C.F.R. § 404.1529. The regulation provides that while ALJs "consider all of [a claimant's] statements about [his or her] symptoms, . . . statements about . . . pain or other symptoms will not alone establish that . . . disab[ility]." 20 C.F.R. § 404.1529(a). And "[i]n evaluating the intensity and persistence of [a claimant's] symptoms, including pain, [ALJs] will consider all of the available evidence," and "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence[.]" *Id.*

Subsection (c) then discusses how ALJs evaluate the intensity and persistence of a claimant's symptoms, such as pain. *See* 20 C.F.R. § 404.1529(c). ALJs consider a claimant's statements "in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether [the claimant] [is] disabled." 20 C.F.R. § 404.1529(c)(4). ALJs then "consider whether . . . any inconsistencies [exist] in the evidence and the extent to which . . . any conflicts [exist] between [the claimant's] statements and the rest of the evidence . . . ." 20 C.F.R. § 404.1529(c)(4).

"Using the *Polaski* factors," an ALJ may "discount[]" "subjective complaints . . . if inconsistencies [exist] in the evidence as a whole." *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2017) (cleaned up) (first citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); then citing *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000)). The factors require the ALJ to examine

"evidence pertaining to 'the claimant's daily activities'; 'the duration, frequency and intensity of the pain'; 'precipitating and aggravating factors'; 'dosage, effectiveness and side effects of medication'; and 'functional restrictions.'" *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015). "The ALJ is not required to discuss each *Polaski* factor as long as" she recognizes and considers "the analytical framework." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [reviewing courts] will defer to [her] judgment even if" she does "not discuss[]" "every factor . . . in depth." *Milam*, 794 F.3d at 984; *see also Bryant*, 861 F.3d at 782 (noting that the ALJ is "not required to discuss each *Polaski* factor as long as she acknowledges and considers the factors before discounting a claimant's subjective complaints." (citation omitted)).

Here, the ALJ "considered all [of Greene's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of [section 404.1529]." Tr. 20. The ALJ concluded that, "[a]fter careful consideration of the evidence," Greene's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21.

The ALJ found that Greene's "statements regarding the severity and limiting effects of her depressive disorder, anxiety disorder, and accompanying symptoms are inconsistent with [Greene's] status examination results and treatment history." Tr. 22. And the ALJ determined that Greene's "mental impairments are largely mild to moderate in nature and improve with treatment." *Id.*; *see* Tr. 355, Tr. 364, Tr. 568–69, Tr. 640–41, Tr. 854, Tr. 1092–98, Tr. 1214–15; *see also Hensley*, 829 F.3d at 933–34 ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (citation omitted)). Greene's Patient Health Questionnaire scores indicated mild depression. Tr. 22; *see* Tr. 854, Tr. 1068. She reported on

September 27, 2023, that "her panic attacks have improved significantly," Tr. 22; *see* Tr. 1196, and reported on February 27, 2024, that her mood was okay and her "racing and ruminating thoughts have improved," Tr. 22; *see* Tr. 1192. The ALJ further highlights that—in "numerous examinations"—Greene "exhibited intact cognitive functioning, memory, thought content, insight, and/or judgment," was "cooperative, appropriate, . . . alert, oriented, well-developed, and well-nourished." Tr. 22; *see* Tr. 210–12, Tr. 354–55, Tr. 359, Tr. 364, Tr. 367, Tr. 607, Tr. 610–11, Tr. 640, Tr. 668–69, Tr. 1017, Tr. 1061, Tr. 1078, Tr. 1193–94, Tr. 1197–98, Tr. 1205, Tr. 1209–10, Tr. 1214. The ALJ also highlights that Greene "exhibited appropriate behavior, normal speech, normal thought content, adequate fund of knowledge, good memory, normal judgment, and intact thought associations during her February 27, 2024, examination." Tr. 22; *see* Tr. 1192–95.

Greene takes issue with the ALJ's analysis, which she calls "boilerplate." Doc. 10 at 6. She avers that the ALJ's RFC determination "was not supported by substantial evidence due to the ALJ's failure to identify genuine inconsistencies between the evidence of record and [her] subjective allegations regarding her mental impairments." *Id.* at 5. Greene alleges that the RFC "failed to incorporate [her] alleged limitations from depression and anxiety," including her alleged symptoms, as noted above. *Id.* at 6.

And while "[t]he ALJ pointed to reports of improvement by [a] February 2024 examination," Greene notes that during that examination, she reported high anxiety, nervousness, depression, low motivation and energy, poor concentration, mood swings, irritability, and panic attacks in public. *Id.* at 7 (citing Tr. 1192). Greene accuses the ALJ of cherry picking the evidence and claims that the ALJ's "review of the evidence mischaracterized [Greene's] condition as significantly improved, whereas a full review of [the examination] reveals that [she] still experienced significant and debilitating symptoms from her mental impairments." *Id.* at 7–8

(citing *Koch v. Kijakazi*, 4 F.4th 656, 665 (8th Cir. 2021) for the proposition that "[i]mproved symptoms do not necessarily equate to improved pain"); *see also* doc. 14 at 1–2. And "the ALJ's reliance on normal mental status examination and certain improvements mischaracterized [Greene's] condition by excluding numerous reports of ongoing or worsening symptoms," which "deprived the ALJ's findings of the support of substantial evidence," Greene claims. Doc. 10 at 8.

The Court finds that ALJ's determination was supported by substantial evidence in finding that the record contradicted Greene's subjective complaints and refusing to modify Greene's RFC. As discussed above, the ALJ's findings relied on Greene's medical history and evidence from her examinations—such reliance was proper. *See Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014) (upholding an ALJ's discounting a claimant's subjective complaints when the ALJ relied on medical records, including records showing improvement); *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003) (upholding an ALJ's determination when the ALJ examined medical records showing some intact functioning). The Court rejects the characterization that the ALJ's analysis was "boilerplate" in any legally significant sense. Doc. 10 at 6.

But Greene accuses the ALJ of cherry picking the evidence (regarding the February 2024 examination and otherwise), stating that "the ALJ's reliance on normal mental status examination and certain improvements mischaracterized Plaintiff's condition by excluding numerous reports of ongoing or worsening symptoms." *Id.* at 8. But the ALJ "is not required to discuss all the evidence submitted," *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). She also need not "explicitly reconcile every conflicting shred of medical evidence." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (cleaned up) (citation omitted).

At best, Greene seems to claim that the ALJ's explanation lacked sufficient thoroughness for not detailing other evidence that Greene highlights. *See* doc. 10 at 4–8. Even if the Court

were to agree—and it does not—"[t]he ALJ's brevity is not reversible error." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021). The Court finds that the ALJ's "reasoning [is] clear enough to allow for appropriate judicial review." *Id.* And alleged deficiencies in opinion writing are not "sufficient reason[s] for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Id.* (cleaned up) (citation omitted).

At worst, Greene suggests that because other evidence in the record contradicts the ALJ's RFC finding, the Court must remand. *See* doc. 10 at 4–8. But the Court "do[es] not reweigh the evidence presented to the ALJ" and must "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Reece*, 834 F.3d at 908 (citation omitted)). And the Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'" *Stoner*, 818 F.3d at 369 (citation omitted).

The Court finds that the ALJ's assessments relied on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (quoting *Consolidated Edison Co.*, 305 U.S. at 229). Greene therefore "seeks a level of explanation not required by the regulations." *Bauer v. Kijakazi*, No. 4:21-cv-176-MTS, 2022 WL 1136140, at *4 (E.D. Mo. Apr. 18, 2022).

**B. Activities of daily living**

The ALJ also found that "[Greene's] statements regarding the severity of her impairments and accompanying symptoms are also largely inconsistent with her activities of daily living," such as being able to "live with others, manage her personal care, prepare simple meals, clean, wash dishes, fold laundry, go outside, leave the house alone, walk, drive, ride in a car, shop, pay

bills, count change, handle a savings account, use a checkbook, read, write, watch television, spend time with others, use a computer, and talk on the telephone." Tr. 22; *see also* Tr. 40–42, Tr. 47–48, Tr. 231–36, Tr. 267–75.

Greene argues that the ALJ "attempted to paint [Greene's] allegations as inconsistent with her activities of daily living," even though the Eighth Circuit stated that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." Doc. 10 at 9 (citing *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005)); *see* doc. 14 at 2–3. Greene alleges that the ALJ "failed to explain why the activities cited conflicted with [Greene's] allegations" that Greene "will go without bathing due to headaches and dizziness, she hardly ever brushes her hair, . . . she may not change out of her pajamas when she does not feel good[,] . . . she only 'sometimes' does laundry and wash[es] dishes, she can barely get out of bed, and she has difficulty with memory, completing tasks, concentration, understanding, and following instructions." Doc. 10 at 9–10; *see* doc. 14 at 3–4. Greene claims that the ALJ "overlooked these reports" and "fail[ed] to explain why the[se] activities . . . supported full-time work[,]" and thereby "mischaracterized the record" and failed to "build a logical bridge between the evidence and the RFC." *Id.* at 10 (citing *Catrina W. v. O'Malley*, No. 23-cv-02975 (JMB/DJF), 2024 WL 5494521, at *3 (D. Minn. Oct. 31, 2024)).

The Court disagrees. When discussing Greene's ability to perform a wide range of daily activities, the ALJ noted that "[m]any of the skills necessary to perform these activities are like those required for full-time competitive employment"—a logical bridge—and that such "range of activity is not entirely consistent with a finding of disability." Tr. 23. The ALJ permissibly relied on such evidence to support her RFC. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) ("Inconsistencies between [a claimant's] subjective complaints of disabling impairments

and evidence concerning her daily living patterns also raise[] doubts."); *see also Bryant*, 861 F.3d at 783 (upholding an ALJ's determination that, in part, relied on an analysis of a claimant's ability to engage in daily activities).

Greene rightly points to the Eighth Circuit's warning in *Reed* not to examine a claimant's ability to perform daily activities in isolation. *See Reed*, 399 F.3d at 924 (noting that the ALJ must examine the claimant's ability to do daily work "in the light of the [other] record-supported limitations on [the claimant's] ability to perform real-world work"). But the ALJ considered Greene's skills alongside many other reasons for finding Greene not disabled. *See* Tr. 20–24; *see Milam*, 794 F.3d at 985 (finding that a claimant's ability to perform ordinary activities, when considered in conjunction with other evidence, supports the claimant's lack of disability).

Finally, to the extent that Greene alleges that the ALJ should have highlighted and addressed Greene's subjective statements regarding her daily activities, *see* doc. 10 at 9–10; doc. 14 at 2–4, the Court reiterates that the ALJ "is not required to discuss all the evidence submitted," *Craig*, 212 F.3d at 436, and also need not "explicitly reconcile every conflicting shred of medical evidence." *Austin*, 52 F.4th at 729 (8th Cir. 2022) (cleaned up) (citation omitted). The Court "will not disturb the ALJ's determination unless it falls outside of the available zone of choice." *Bradford v. O'Malley*, 104 F.4th 1055, 1060 (8th Cir. 2024) (cleaned up) (citation omitted). Here, the ALJ's determination is well within that zone.

The Court accordingly finds that the ALJ's assessments relied on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (quoting *Consolidated Edison Co.*, 305 U.S. at 229). Greene therefore "seeks a level of explanation not required by the regulations." *Bauer*, 2022 WL 1136140, at *4.

## VI. Conclusion

The Court affirms the Commissioner's decision and dismisses with prejudice Greene's [1] Complaint. A judgment accompanies this Memorandum and Order.

So ordered this 19th day of August 2026.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE